## SNIDER v. ALABAMA GREAT SOUTHERN R. CO. (6 Div. 911.)

(Supreme Court of Alabama. May 10, 1923. Rehearing Granted June 30, 1923.)

1. Railroads ⚖══339(1)—Failure to give statutory signals not per se wantonness.

The mere failure to observe the statutory requirement as to signals even at a populous place or crossing, without more, is not per se wantonness.

2. Railroads ⚖══344(9)—Counts alleging wantonness in failing to·signal at crossing held defective.

In action for killing one crossing the track, counts alleging wantonness in failing to keep lookout or give signals at place where numbers of people crossed the track held defective in failing to aver the speed of the train.

3. Railroads ⚖══339(1)—Proof held not to show wantonness.

Proof that the point where the deceased was killed was crossed by a great number of people at the time of the day when deceased was killed, but failing to show that the trainmen knew of the custom to cross the track in great numbers at such hour, held insufficient to show wantonness of trainmen in failing to keep a lookout and give signals.

### On Rehearing.

4. Railroads ⚖══350(33)—Subsequent negligence held for jury.

Where whether enginemen were guilty of subsequent negligence in failing to blow whistle after discovering deceased depended on whether she was looking towards the train, it being daylight, and evidence conflicting on that point, the issue was for the jury.

Appeal from Circuit Court, Tuscaloosa County; Henry B. Foster, Judge.

Action for damages by William E. Snider, as administrator of the estate of Margaret Snider, deceased, against the Alabama Great Southern Railroad Company, for the wrongful killing of his intestate. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

The complaint alleges that the defendant was a common carrier operating a railroad through the village of Vance, a regular station or stopping place, in which village a public road crossed or was crossed by defendant's railroad; that plaintiff's intestate, while crossing or attempting to cross said railroad in said village, was run upon, over, or against by a locomotive or train of defendant, inflicting injuries from which she died.

In count 4 the breach or negligence is thus averred:

"Plaintiff avers that one or more of the servants, agents, or employees of defendant in charge, control, or management of said locomotive or train, while engaged within the line and scope of his or their employment for the defendant, willfully or wantonly caused, permitted, or allowed said locomotive or train to run upon, over, or against plaintiff's intestate as aforesaid, by reason of which, and as a proximate consequence of which wilfulness or wantonness, plaintiff's intestate's death resulted."

Counts 7 and 8 aver that for a long time prior to, and up to, the time intestate was killed the public generally had constantly traveled along and across the railroad at said public road crossing at about the point where intestate was killed; that such travel was of such frequency and by such numbers that the agents of defendant knew persons were likely to be in a position crossing said railroad exposed to peril from approaching

trains; that, knowing this, the agents in charge of said train, in wanton disregard of probable consequences to person likely to be in dangerous proximity to the track, and knowing that the ringing of the bell or blowing of the whistle would probably prevent such injury, willfully or wantonly ran said train at and by the point where intestate was killed without keeping a lookout and without giving such signals of approach; in consequence of such willful or wanton conduct intestate was killed.

Brown & Ward, of Tuscaloosa, for appellant.

Though one may be guilty of negligence in crossing or being on a railroad track, he may recover for willful or wanton injury, and evidence of customary and frequent use of the track at the place of injury is admissible. L. & N. R. Co. v. Loyd, 186 Ala. 119, 65 South. 153; N. A. Ry. Co. v. Guttery, 189 Ala. 604, 66 South. 580; So. Ry. Co. v. Stewart, 179 Ala. 304, 60 South. 927; Birmingham So. R. Co. v. Fox, 167 Ala. 281, 52 South. 889; So. Ry. Co. v. Shipp, 169 Ala. 327, 53 South. 150; So. Ry. Co. v. Smith, 173 Ala. 697, 55 South. 913; Nave v. A. G. S. R. R. Co., 96 Ala. 264, 11 South. 391; So. Ry. Co. v. Bush, 122 Ala. 470, 26 South. 168; L. & N. R. R. Co. v. Orr, 121 Ala. 489, 26 South. 35; C. of G. Ry. Co. v. Partridge, 136 Ala. 587, 34 South. 927; Miles v. Hines, 205 Ala. 83, 87 South. 837; L. & N. R. R. Co. v. Garnett, 129 Miss. 795, 93 South. 241; L. & N. R. R. Co. v. Webb, 97 Ala. 308, 12 South. 375; Birmingham Ry. & El. Co. v. Smith, 121 Ala. 352, 25 South. 768; B. R. L. & P. Co. v. Jones, 153 Ala. 157, 45 South. 177; Schmidt v. Mobile Light & R. Co., 204 Ala. 694, 87 South. 181. While under some circumstances trainmen can presume a person will get off the track or stop before reaching it, where the person has his back to or vision from the train while in dangerous proximity, it becomes the duty of the engineer or fireman, or both, to give prompt warning, slacken speed, and, if possible, stop the train. C. of G. Ry. Co. v. Blackmon, 169 Ala. 304, 53 South. 805; Anniston El. & Gas Co. v. Rosen, 159 Ala. 195, 48 South. 798, 133 Am. St. Rep. 32; note to Union Pa. Ry. Co. v. Cappier, 69 L. R. A. 554; L. & N. R. R. Co. v. Rayburn, 198 Ala. 191, 73 South. 461; Brown & Flowers v. C. of G. Ry. Co., 197 Ala. 71, 72 South. 366; A. G. S. R. R. Co. v. McWhorter, 156 Ala. 269, 47 South. 84; Herring v. L. & N. R. R. Co., 195 Ala. 422, 70 South. 749; C. of G. Ry. Co. v. Blackmon, 169 Ala. 304, 53 South. 805; L. & N. R. R. Co. v. Calvert, 172 Ala. 597, 55 South. 812; So. Ry. Co. v. Lawler, 11 Ala. App. 241, 65 South. 857; L. & N. R. R. Co. v. Rayburn, 192 Ala. 494, 68 South. 356. The general charge should not be given, if the evidence be in conflict, or if it be circumstantial, or if a material fact in the case rests in inference, or if the evidence reasonably affords or justifies adverse or different inferences or conclusions, or, as a general rule, on opinion or expert evidence. Tabler v. Sheffield L. I. C. Co., 87 Ala. 305, 6 South. 196; C. of G. Ry. Co. v. Ellison, 199 Ala. 571, 75 South. 159; Birmingham So. Ry. Co. v. Fox, supra; Vaughn v. Dwight Mfg. Co., 206 Ala. 552, 91 South. 77; Sloss-Sheffield S. & I. Co. v. Jones, 207 Ala. 7, 91 South. 808; A. G. S. R. R. Co. v. Sanders, 203 Ala. 57, 82 South. 17; Atlanta & St. A. B. Ry. Co. v. Hodges, 19 Ala. App. 42, 94 South. 252; Warrant Warehouse Co. v. Cook, 209 Ala. 6, 95 South. 282.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellee.

Failure on the part of operatives of a train to give statutory signals is no more than simple negligence. L. & N. R. R. Co. v. Turner, 192 Ala. 392, 68 South. 277; A. G. S. R. R. Co. v. Linn, 103 Ala. 134, 15 South. 508; Savannah & W. R. Co. v. Meadors, 95 Ala. 137, 10 South. 141; E. T. & V. Ry. Co. v. Kornegay, 92 Ala. 228, 9 South. 557. One who is about to cross a railroad track must stop, look, and listen for approaching trains, and this is a continuing duty, a violation of which will defeat a recovery for simple negligence on the part of a railroad. L. & N. R. R. Co. v. Turner, supra; C. of G. Ry. Co. v. Foshee, 125 Ala. 199, 27 South. 1006; L. & N. R. R. Co. v. Calvert, 172 Ala. 597, 55 South. 812; L. & N. R. R. Co. v. Williams, 172 Ala. 560, 55 South. 218; L. & N. R. R. Co. v. Webb, 90 Ala. 185, 8 South. 518, 11 L. R. A. 674. The burden is on plaintiff to show negligence after discovery of peril or wantonness. B. & A. R. R. Co. v. Campbell, 203 Ala. 296, 82 South. 546; Ala. G. S. R. R. Co. v. Smith, 196 Ala. 77, 71 South. 455; Carlisle v. Ala. G. Sou. R. R. Co., 166 Ala. 591, 52 South. 341; Jolley v. Sou. Ry. Co., 197 Ala. 60, 72 South. 382; C. of Ga. Ry. Co. v. Moore, 200 Ala. 213, 75 South. 971; L. & N. R. R. Co. v. Jones, 191 Ala. 484, 67 South. 691; L. & N. R. R. Co. v. Rayburn, 192 Ala. 494, 68 South. 356; L. & N. R. R. Co. v. Moran, 190 Ala. 108, 66 South. 799; Cardwell v. L. & N. R. R. Co., 185 Ala. 628, 64 South. 564; L. & N. R. R. Co. v. Heidtmueller, 206 Ala. 29, 89 South. 191; B. R. & E. Co. v. Bowers, 110 Ala. 328, 20 South. 345; L. & N. R. R. Co. v. Farley, 201 Ala. 365, 78 South. 221; Saginaw L. & L. Co. v. Hale, 202 Ala. 513, 81 South. 15; G. P. R. Co. v. Lee, 92 Ala. 262, 9 South. 230; L. & N. R. R. Co. v. Webb, 97 Ala. 308, 12 South. 374; H. A. & B. R. Co. v. Sampson, 91 Ala. 560, 8 South. 778.

ANDERSON, C. J. [1, 2] Counts 7 and 8 charge wantonness, but the facts set up as

constituting same are not sufficient as the mere failure to observe the statutory requirement as to signals even at a populous place or crossing without more is not per se wantonness. A. G. S. R. R. v. Linn, 103 Ala. 134, 15 South. 508; L. & N. R. R. v. Turner, 192 Ala. 392, 68 South. 277. For aught appearing from said counts, the train may have been moving at a very slow rate of speed. Moreover, count 4, to which the demurrer was overruled, charged wantonness in most general terms, and under which the plaintiffs could prove wanton misconduct of every description.

[3] The intestate was not killed at a public crossing, but it is insisted, and may be conceded, that it was a point where people crossed the defendant's track in great numbers at a particular hour of the day, to wit, just before and immediately after the arrival of the mail train, and which was due to arrive at or about the time of the injury in question, yet the proof fails to show that the train in question was operated at such a rapid rate of speed as to render a failure to give the warning signals wanton misconduct on the part of the enginemen. Cases supra. The proof shows that this was a heavy loaded freight train, going up grade, making a great noise by the exhaust, and not going at a greater rate of speed than 10 to 12 miles per hour, and could have been stopped in a very short distance, so, even if the signals were not given, but as to which fact there was a conflict in the evidence, the conduct of the enginemen did not, as matter of law, amount to wantonness. Moreover, had the proof shown that the train was running at a dangerous rate of speed under the surrounding circumstances, there is nothing to show that these particular enginemen were conscious of probable danger to people at the point in question. True, they had been running on this road several years, but there is nothing to indicate that they had passed this particular point with such frequency at the particular hour of the day when the passageway was used with great frequency as to apprise them of the use or habit of the people, and thereby charge them with notice of the probable danger. This was a through freight, which may have had no regular schedule time, nor was there proof of the schedule time of the runs of this engineer or fireman, so as to make them familiar with the use of defendant's track as a passageway at the hour when it is claimed the crossing was populous. L. & N. R. R. v. Heidtmueller, 206 Ala. 29, 89 South. 191.

The proof also shows that the train could not have been stopped after discovering the intestate's peril and before striking her, but, in addition to this, it shows that the train was equipped with the usual modern means of stoppage, and which were in good working order, and that the engineer immediately resorted to the most effective means of stopping the train as soon as he was informed of the danger. Harris v. N. C. & St. L. R. R., 153 Ala. 139, 44 South. 962, 14 L. R. A. (N. S.) 261.

It is insisted that the engineer or fireman, one or both, was guilty of subsequent negligence for failing to blow the whistle after discovering the intestate. This may be questionable for the reason that they may have thought she was not in peril under ordinary conditions or they may not have had time to do so; but we may concede that they did have time, but the only purpose or good in blowing the whistle was to warn her of the approach of the train, and the undisputed evidence shows that when she was first discovered by the fireman, about 25 feet ahead, she was looking towards the approaching train. There was no proof that her eyesight was defective, and presumptively she saw the train, and blowing the whistle could serve no good purpose. On the other hand, if we concede subsequent negligence in this respect upon the part of the defendant's servants, a careful examination of this record discloses a case of the most flagrant negligence on the part of the intestate, not only initial, but concurrent, and subsequent to any negligence of the defendant's servants. Practically all of the witnesses, including the plaintiff's, who were a much greater distance from the train than the intestate, heard the train, which was making a great noise, and, in the absence of proof of a defective hearing, it is almost, if not quite, a conclusive presumption that she heard the train and knew of its approach, while the undisputed evidence shows that she was looking right towards the train, and saw it in time to escape. In other words, this record discloses either a case of suicide, but more probably a case where the intestate knew of the approach of the train, but preferred taking a chance in crossing ahead of same to waiting until it passed, and misjudged the speed and time essential to do so.

The case of A. G. S. R. R. v. McWhorter, 156 Ala. 269, 47 South. 84, is unlike the present case. There the intestate was down on the track asleep, and we held that a blast of the whistle may have aroused him and informed him of the approach of the train. Here the intestate was up near the track looking towards the train, and needed no signal to make her aware of its approach.

The trial court did not commit reversible error in ruling upon the evidence. In the first place, the plaintiff got the full benefit of the evidence sought by those questions to which objection was sustained by the answers to those which were properly framed as to the condition of the passageway at the proper time; second, they merely sought evidence to establish the frequency with which the track was crossed, and, as above demonstrated, even if it was such a populous crossing place as to constitute an element of wantonness, the evidence fails to establish all of the other essential facts.

The trial court properly gave the affirmative charge for the defendant, and the judgment of the circuit court is affirmed.

Affirmed.

SAYRE, GARDNER, and MILLER, JJ., concur.

## On Rehearing.

ANDERSON, C. J.  [4] Upon the original consideration of this case, we labored under the impression that the answers to the interrogatories introduced by the plaintiff, wherein it was stated that, when the fireman discovered the intestate, she was looking towards the train, was not contradicted, but upon a more careful consideration of the evidence, we find that there was sufficient dispute on this point as to make it a question for the jury as to whether or not the intestate was guilty of subsequent negligence, that is, continuing her way across after becoming aware of the approach of the train. This being a question for the jury, it was also open to them to find that the enginemen were guilty of proximate, subsequent negligence in failing to blow the whistle. True, the intestate was not far from the train when discovered by the fireman, but the train was going slowly, and it was open to the jury to find that a quick, loud blast of the whistle may have informed her of the danger in time to arrest her progress. A. G. S. R. R. v. McWhorter, 156 Ala. 269, 47 South. 84; A. G. S. R. R. v. Sanders, 203 Ala. 57, 82 South. 17, and cases there cited.

We therefore hold that the trial court erred in giving the general charge for the defendant as to the entire complaint, and the rehearing is granted, the judgment of affirmance is withdrawn, and the judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

SAYRE, GARDNER, and MILLER, JJ., concur.